UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| FAIR HOUSING JUSTICE CENTER, INC., <br><br> Plaintiff, <br><br> v. <br><br> GOTHAM ORGANIZATION INC., FXCOLLABORATIVE ARCHITECTS, LLP, BRAUSE REALTY, INC., and PURVES STREET OWNERS LLC, <br><br> Defendants. | Case No.:  19-CV-_____ <br><br> COMPLAINT |

Plaintiff Fair Housing Justice Center, Inc. ("FHJC") by its attorneys, Emery Celli Brinckerhoff & Abady LLP, for its First Amended Complaint against Defendants Gotham Organization Inc. ("Gotham"), FXCollaborative Architects, LLP ("FXFOWLE"), Brause Realty, Inc. ("Brause"), and Purves Street Owners LLC (collectively the "Defendants"), alleges as follows:

## INTRODUCTION

1. Gotham is a major developer of more than a thousand multi-family rental units in New York City, including developing 272 rental units at The Forge in Long Island City, Queens.  FXFOWLE is an architectural firm that designed The Forge.  Brause is a real estate firm that co-developed The Forge with Gotham.

2. Testing by the FHJC has revealed that the building is inaccessible to people with disabilities.  Although it has been well settled for decades that developers and architects are required to design and construct new residential multi-family buildings with certain accessibility features, Gotham, FXFOWLE, and Brause openly ignored their legal obligations and denied equal housing opportunity to people with physical disabilities in New York City. Strikingly, FXFOWLE ignored its legal obligations in designing The Forge even though one of

its affiliated businesses was sued by the Department of Justice concerning a *different* inaccessible New York City rental building and entered into a consent decree admitting violations for that building.

3. Based on investigations conducted by the FHJC over the past ten years in New York City, nearly 20 lawsuits have been filed in federal court against some of the largest multi-family residential developers and architects alleging a failure to design and construct accessible housing as required by fair housing laws. Broad remedies to retrofit the housing, compensate victims, and ensure that future new residential construction is accessible to people with physical disabilities have been implemented in those cases that have been resolved. As a result, FHJC has found an increased level of compliance generally among residential developers in New York City. In this context, Gotham, FXFOWLE, and Brause's continuing noncompliance is indicative of the companies' ongoing practice of denying housing to persons with physical disabilities, including those who use wheelchairs, and their intentional refusal to comply with fair housing laws.

4. FHJC seeks to halt and reform Defendants' discriminatory practices so that multi-family housing developed by Defendants, currently and in the future, will be designed and constructed in full compliance with the law.

## JURISDICTION AND VENUE

5. This Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1343, 28 U.S.C. § 2201, and 42 U.S.C. § 3613. This Court has supplemental jurisdiction over the New York State and New York City causes of action pursuant to 28 U.S.C. § 1367.

6. Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(1) and (b)(2) because Defendants' offices are in this District and a substantial part of the events giving rise to the claim occurred in this District.

## THE PARTIES

**Plaintiff**

7. The FHJC is a non-profit organization dedicated to ensuring that all people have equal access to housing opportunities in the New York City metropolitan region by eliminating housing discrimination and creating open, accessible, and inclusive communities. The FHJC's office is located in Queens, New York.

8. Among other things, the FHJC: (a) provides information to the public and other nonprofit organizations in the New York City area about fair housing laws, (b) provides intake counseling to individuals and organizations alleging housing discrimination, (c) conducts testing and other investigations of allegations of housing discrimination, (d) makes legal referrals to cooperating attorneys, (e) assists with the preparation and filing of administrative housing discrimination complaints, and (f) provides post-referral litigation support services.  The FHJC provides these services free of charge and without regard to income.

9. The FHJC also conducts testing investigations for government law enforcement agencies, provides technical assistance to nonprofit organizations engaging in fair housing enforcement activities, and engages in policy initiatives that further the FHJC's mission, including the publication and dissemination of reports and educational materials.

10. The FHJC operates the Adele Freidman Housing Accessibility Fund ("the Fund") for the purpose of providing financial assistance to persons with physical disabilities within FHJC's service area who need reasonable modifications made to their existing housing to make it accessible.  FHJC established the Fund, in part, due to residential developers and architects continuing to design and construct inaccessible multi-family housing in New York City in violation of fair housing laws.

11. The FHJC employs individuals as "testers," who are persons that pose as renters or homebuyers for the purpose of obtaining information about the conduct of local governments, landlords, real estate companies, housing developers, agents, and others to determine whether illegal housing discrimination is taking place.

12. The FHJC expended staff time and other resources to investigate and respond to Defendants' discriminatory practices, which diverted resources away from other FHJC activities.

13. By designing and constructing inaccessible housing, Defendants' practices have frustrated and continue to frustrate the FHJC's mission to ensure that all people have equal access to housing opportunities in the greater New York City region.

**Defendants**

14. Defendant the Gotham Organization Inc. ("Gotham") is a business corporation incorporated in New York, with its principal place of business at 432 Park Ave South, 2nd floor, New York, New York 10016.  Gotham advertises as having built over 40 million square feet of space in its 100-year existence.  Defendant Gotham and its related entities developed, own, and manage The Forge multi-family rental building in New York City.

15. Defendant FXCollaborative Architects, LLP ("FXFOWLE") is a limited liability partnership incorporated in New York, with its principal place of business at 22 West 19th Street, 11th floor, New York, New York 10011. Defendant FXFOWLE is the architectural firm that designed and constructed the multi-family residential dwelling units and common areas at The Forge. Daniel Kaplan is a senior partner of FXFOWLE who served as the architect of record on behalf of FXFOWLE Architects, P.C. for the architectural services provided for the design and construction of The Helena.  In January 2018, Defendant FXFOWLE Architects, LLP changed its name to FXCollaborative Architects LLP.

16. Defendant Brause Realty Inc. is a company incorporated in New York with its principal place of business at 52 Vanderbilt Avenue, New York, New York 10017. Defendant Brause Realty Inc. is the co-developer with Defendant Gotham of The Forge and is responsible for the overall design and construction of the dwelling units and common areas at The Forge.

17. Purves Street Owners LLC is a limited liability company that is incorporated in the State of Delaware. Its New York department of state registration states that its Registered Agent is National Registered Agents, Inc. in New York, New York. Purves Street Owners LLC owns The Forge. According to a 2014 deed recorded with the City of New York, Purves Street Owners LLC operates in New York City from the office of Defendant Brause at 52 Vanderbilt Avenue, New York, New York 10017. As the owner of The Forge, Defendant Purves Street Owners LLC has been responsible for the overall design and construction of the dwelling units and common areas at The Forge.

## STATUTORY AND REGULATORY FRAMEWORK

18. In 1988, Congress enacted the Fair Housing Act Amendments ("FHAA") design and construction accessibility requirement as part of comprehensive amendments to the Fair Housing Act to prohibit discrimination on the basis of disability.[1] The legislative history of the FHAA reflects Congressional findings that steps and thresholds at building or unit entrances send the same signal to persons using a wheelchair as a posted sign saying "No Disabled People Allowed."

---

[1] The Fair Housing Act Amendments ("FHAA") uses the term "handicap" rather than "disability." Both terms have the same legal meaning. *See Bradgon v. Abbott*, 524 U.S. 624, 631 (1998). This complaint uses the terms "disability" and "handicap" interchangeably. The term "disability" is more generally accepted.

19. Poorly designed and constructed buildings often exclude people with physical disabilities, including those use wheelchairs. In considering the 1988 amendments, Congress stressed that enforcement of civil rights laws is necessary to protect people with disabilities from the "devastating" impact of housing discrimination, including "architectural barriers" erected by architects, developers and builders who fail to design and construct dwellings and common use areas at those dwellings accessible to and adaptable by people with physical disabilities. H.R. Rep. No. 100-711, at 25 (1988), *reprinted in* 1988 U.S.C.A.A.N. 2173, 2186; 134 Cong. Rec. S10454, 10463 (Aug. 1, 1998).

20. The FHAA mandates that multi-family residential buildings containing four (4) or more units and built for first occupancy after March 13, 1991 ("covered multi-family dwellings") are subject to certain design and construction requirements. Covered multi-family dwellings must provide:

    a. Public-use and common-use areas that are readily accessible to, and usable by, people with mobility impairments;

    b. Doors designed to allow passage into and within all premises within such dwellings that are sufficiently wide to allow passage by people in wheelchairs;

    c. An accessible route into and through the dwellings;

    d. Light switches, electrical outlets, thermostats and other environmental controls in accessible locations;

    e. Reinforcements in bathroom walls that allow for the later installation of grab bars; and

    f. Usable kitchens and bathrooms such that an individual in a wheelchair can maneuver about the space.

21. Pursuant to Congressional authority, the United States Department of Housing and Urban Development ("HUD") promulgated the final FHAA design and construction regulations in January 1989. 24 C.F.R. § 100.205. HUD published the final Fair

Housing Accessibility Guidelines on March 6, 1991, 56 Fed. Reg. 9472 ("FHAAG"), which incorporates the requirements of the American National Standard for buildings and facilities providing accessibility and usability for people with physical disabilities, A117-1-1986 ("ANSI"), the *Fair Housing Act Design Manual* in August 1996, which was revised in August 1998, and the *Accessibility Requirements for Covered Multifamily Dwellings under the Fair Housing Act* in April 2013.

22. The New York State Human Rights Law similarly prohibits failing to design and construct covered multifamily dwellings in an accessible manner.  Article 15 of the New York Executive Law §§ 296(5) and (18).

23. The New York City Human Rights Law prohibits discrimination in the rental of, or to otherwise deny or withhold, a housing accommodation to a renter because of disability. NYC Administrative Code §§ 8-107(5) and 27-292.8 which contains the accessibility requirements under the New York City Building Code.

FACTUAL BACKGROUND

**FXFOWLE Has Engaged In A Pattern Of Violating Accessibility Laws**

24. In 2014, the United States of America, by the United States Attorney for the Southern District of New York, filed a complaint against a business affiliated with Defendant FXFOWLE, entitled FXFOWLE Architects, P.C. (14 cv 2698), alleging that the design of a residential building called The Helena on West 57th Street in Manhattan violated the Fair Housing Act and the Americans with Disabilities Act. The United States alleged that Daniel Kaplan was the architect of record for The Helena.

25. The United States alleged that The Helena was designed with "scores of inaccessible features."

7

26. In February 2016 FXFOWLE's affiliated business agreed to enter into a consent decree with the United States. As part of the consent decree, FXFOWLE's affiliated business *admitted* that The Helena did not satisfy the accessibility standards established under the Fair Housing Act Guidelines.

27. FXFOWLE's affiliated business agreed to a three-year consent decree which required it to change its practices, pay into a settlement fund for those harmed at The Helena, pay a civil penalty, and educate its employees, among other provisions.

28. Upon information and belief, FXFOWLE was designing The Forge during the term of the consent decree with the United States.

**Lack of Accessibility at The Forge**

29. The Forge is a 38-story, 272-unit residential rental building located at 44-28 Purves Street, Long Island City, Queens. It was built in 2017 and is managed by Defendant Gotham. The building was designed by FXFOWLE and was co-developed by Defendant Gotham and Defendant Brause Realty.

30. The Forge includes studio, 1, and 2-bedroom apartments. All of the apartments at The Forge are covered dwelling units as defined by the Fair Housing Act. Common amenities include, among other things, a parking garage; outdoor amenities such as a swimming pool, terraces, grills, and a movie screen; and indoor amenities such as a children's playroom, fitness center, tenant storage, laundry, and a resident lounge with a billiards room.

31. On November 14, 2017, FHJC sent two testers to The Forge posing as husband and wife to inquire about a 1- or 2-bedroom apartment for rent on behalf of a relative with disabilities who uses a wheelchair.

32. The two FHJC testers met with a woman named Colleen who said she was a leasing agent for The Forge. At the time of the test, the building was still under construction.

Colleen showed the testers five model apartments in the B, C, D, F and G lines.  The testers observed the following during their visit to The Forge:

      a.      Hallways in C and G line apartments were too narrow; and

      b.      Environmental control was too high in the den in the F line one-bedroom apartment.

33. On February 6, 2018, FHJC sent two testers to The Forge posing as sisters to inquire about a 1- or 2-bedroom apartment for a relative with disabilities who uses a wheelchair.

34. The two FHJC testers met with a man named Hardeep who said he was a leasing manager for The Forge.  Hardeep showed the testers five apartments and certain common areas.  The testers observed the following during their visit to The Forge:

      a.      At the front entrance of the building, the doors for exiting the building were not accessible;

      b.      A garbage room door and refuse chute handle were not accessible;

      c.      The thermostat in one apartment was too high;

      d.      The thermostat in the tenant lounge was too high;

      e.      The electrical outlets in the gym and lounge were too low; and

      f.      The common kitchen in the tenant lounge did not have sufficient clear width from the kitchen cabinets to the kitchen island.

**Gotham's and FXFOWLE's Ongoing Design and Construction of Inaccessible Housing**

35. FHJC has identified other multi-family residential apartment buildings designed and constructed by Defendants that have inaccessible design and construction features.

36. The Ashland is a 53-story, 586-unit residential rental building located at 250 Ashland Place in Fort Greene, Brooklyn.  It was built in 2016 and is owned, developed, and managed by Defendant Gotham.  The building was designed by FXFOWLE.  An investigation by FHJC revealed numerous inaccessible features, as detailed in a pending federal action

9

captioned, *FHJC v. Gotham Organization Inc. et. al,* 19 Civ. 4764 (S.D.N.Y.) (Woods, J.).

        37.    The Nicole is a 20-story, 145-unit resident rental building located in Hell's Kitchen on West 55th Street and 9th Ave. in Manhattan that Gotham built in 2004. An investigation by FHJC revealed numerous inaccessible features, as detailed in a pending federal action captioned, *FHJC v. Gotham Organization Inc. et. al,* 19 Civ. 4764 (S.D.N.Y.) (Woods, J.).

        38.    The inaccessible design and construction features at The Ashland, The Nicole, and The Forge are similar. And the inaccessible features of The Ashland and The Forge are similar to the inaccessible features of The Helena that were the subject of a consent decree with the United States. These similarities (which, for Gotham, spanned 12 years) indicate that Defendants have a regular practice of designing and constructing multi-family residential dwellings in New York City that do not comply with the accessibility requirements of the Fair Housing Act, the New York State Human Rights Law or the New York City Human Rights Law.

        39.    FHJC has identified other multi-family residential apartment buildings that Gotham is currently in the process of designing and constructing, including two projects in Long Island City's Hunter Point South in Queens, one with 452 residential units and the other with 692 residential units.[2] FHJC has also identified other multi-family residential apartment buildings designed by FXFOWLE that are opening this year, including the Crossing at Jamaica Station which has 669 units. Since construction has not yet been completed, or in some instances started, at these additional sites, FHJC is currently unable to determine whether their design or construction complies with the accessibility requirements of fair housing laws.

---

[2] *See* https://therealdeal.com/2019/04/05/the-top-10-biggest-real-estate-projects-coming-to-nyc-23/.

## LEGAL CLAIMS

### FIRST CAUSE OF ACTION
### Fair Housing Act

40. Plaintiff realleges and incorporates by reference the allegations set forth in this Complaint as if fully set forth herein.

41. The apartment units at The Forge are "covered multi-family dwellings" as defined by 42 U.S.C. § 3604(f)(7).

42. Defendants Gotham Organization Inc., FXCollaborative Architects, LLP, Brause Realty Inc., and Purves Street Owners LLC have designed and constructed multifamily dwellings and common use areas at The Forge in violation of 42 U.S.C. § 3604(f)(3)(C).

43. As a direct and proximate result of Defendants Gotham Organization Inc., Brause Realty, Inc., and Purves Street Owners LLC's failure to design and construct in compliance with the accessibility requirements of the Fair Housing Act, Plaintiff FHJC has suffered, and will continue to suffer, injury, including monetary damages.

44. As a direct and proximate result of Defendants' failure to design and construct in compliance with the accessibility requirements of the Fair Housing Act, inaccessible dwellings have been constructed in New York City that reduce housing opportunities for persons with physical disabilities.

45. These Defendants' failure to design and construct accessible housing was and is intentional, willful, or done with reckless disregard.

### SECOND CAUSE OF ACTION
### New York State Human Rights Law

46. Plaintiff realleges and incorporates by reference the allegations set forth in this Complaint as if fully set forth herein.

47. Plaintiff is a person as defined by Executive Law § 292(1).

48. The apartment units at The Forge are "housing accommodations" as defined by Executive Law § 292(10).

49. Defendants Gotham Organization Inc., FXCollaborative Architects, LLP, Brause Realty Inc., and Purves Street Owners LLC have designed and constructed The Forge in violation of the accessibility requirements found in Executive Law § 296(18)(3) and the New York State Uniform Fire Prevention and Building Code.

50. As a direct and proximate result of Defendants' failure to design and construct in compliance with the accessibility requirements of the New York State Human Rights Law, Plaintiff FHJC has suffered injury, including monetary damages.

51. Defendants' failure to design and construct accessible housing was intentional, willful, or with reckless disregard.

### THIRD CAUSE OF ACTION
### New York City Human Rights Law

52. Plaintiff realleges and incorporates by reference the allegations set forth in this Complaint as if fully set forth herein.

53. Plaintiff is a person as defined by Administrative Code § 8-102(1).

54. The apartment units at The Forge are "housing accommodations" as defined by Administrative Code § 8-102(10).

55. Defendants Gotham Organization Inc., FXCollaborative Architects, LLP, Brause Realty, Inc., and Purves Street Owners LLC, have designed and constructed the above-identified housing accommodations in violation of the accessibility requirements found in Administrative Code § 27-292.8.296(18)(3).

56. By doing so, these Defendants are otherwise denying and/or withholding housing accommodations from people with disabilities in violation of Administrative Code § 8-107(5)(a)(1).

57. By doing so, these Defendants are discriminating in the furnishing of facilities or services in connection with housing accommodations based on disability in violation of Administrative Code § 8-107(5)(a)(2).

58. As a direct and proximate result of Defendants' failure to design and construct in compliance with the accessibility requirements of the New York City Human Rights Law, Plaintiff FHJC has suffered injury, including monetary damages.

59. Defendants' failure to design and construct was intentional, willful, or with reckless disregard.

60. Plaintiff has caused to be served a copy of the Complaint and this First Amended Complaint upon the City Commission on Human Rights and Corporation Counsel, pursuant to Administrative Code § 8-502(c).

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests that judgment be entered against Defendants as follows:

(a) Declaring that Defendants' discriminatory practices violate the Fair Housing Act, the New York State Human Rights Law, and the New York City Human Rights Law.

(b) Enjoining Defendants, Defendants' agents, employees, and successors, and all other persons in active concert or participation from discriminating on the basis of disability, by failing to design and construct covered multifamily dwellings in

compliance with the accessibility requirements of the Fair Housing Act, the New York State Human Rights Law and the New York City Human Rights Law.

(c) Enjoining Defendants and their agents, employees, and successors, and all other persons in active concert or participation to:

    i. Make or pay for all the necessary retrofitting in the multifamily dwellings and common areas of The Forge;

    ii. Make all necessary modifications to the design and construction of multi-family covered dwellings currently planned for construction in New York City;

    iii. Make all necessary modifications to their policies, practices, and procedures to comply with fair housing laws;

    iv. Train all management, agents, and employees on fair housing laws;

    v. Allow monitoring of their design and construction of covered multifamily dwellings for compliance with the accessibility requirements of the Fair Housing Act, the New York State Human Rights Law and the New York City Human Rights Law;

(d) Awarding such damages to Plaintiff as will fully compensate for injury caused by Defendants' unlawful practices;

(e) Awarding punitive damages to Plaintiff;

(f) Awarding Plaintiff reasonable attorneys' fees, costs, and expenses incurred in prosecuting this action; and

(g) Granting Plaintiff such other further relief as may be just and proper.

Dated: New York, New York
November 13, 2019

        EMERY CELLI BRINCKERHOFF
        & ABADY LLP

        By:     /s/ *Debra Greenberger*
        Diane L. Houk
        Debra L. Greenberger
        600 Fifth Avenue, 10th Floor
        New York, New York 10020
        Phone: (212) 763-5000
        Fax: (212) 763-5000

        *Attorneys for Plaintiff*